DEC 06 2018

Clerk, U.S. Courts
District of Montana
Helena Division

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA - HELENA DIVISION

| | |
|---|---|
| NATHANIEL KIBBY<br>INMATE #3019567<br>PETITIONER | SWORN DECLARATORY AFFIDAVIT<br>AND<br>LEGAL MEMORANDUM |
| V. | |
| JIM SALMONSON (INTERIM)<br>WARDEN - MSP - DEERLODGE<br>DEFENDANT | CAUSE NO: CV18-H-BMM-JTJ |

I. NOW COMES THE PETITIONER (KIBBY) WHO SUBMITS THE FOLLOWING SWORN DECLARATION IN SUPPORT OF HIS: (A) PETITION TO RECONSIDER ORDER, AND (B) EMERGENCY PETITION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION. ASSERTING THAT THE EVENTS DESCRIBED IN SUBSEQUENT PARAGRAPHS ARE PRESENTED IN CHRONOLOGICAL ORDER:

(1) ON FRIDAY 9/7/18,

A) PRISON EDUCATION DIRECTOR MARISA BOSTWICK MALICIOUSLY AND PURPOSEFULLY FILED A FALSE DISCIPLINARY INFRACTION REPORT, AND I WAS TAKEN FROM MY HOUSING UNIT IN MEDIUM CUSTODY GENERAL POPULATION TO PRE HEARING CONFINEMENT IN THE MAX CUSTODY ADMINISTRATIVE SEGREGATION UNIT.

B) BOSTWICK HAS A NOTORIOUS REPUTATION AMOUNG INMATES FOR FILING FALSE ACCUSATIONS.

(2) A) AN HOUR AFTER ARRIVING IN DETENTION, AN UNIDENTIFIED FEMALE GUARD CAME TO MY CELL TO SERVE ME THE DISCIPLINARY INFRACTION REPORT

B) SHE PRECOMPLETED VARIOUS SECTIONS ON THE FORM, OPENED THE TRAY SLOT IN THE CELL DOOR AND GAVE ME A DIRECT ORDER TO SIGN THE REPORT WHILE SHE HELD ONTO THE PAPERWORK ON HER SIDE OF THE DOOR,

DEC 0 6 2018
Clerk, U.S. Courts
District of Montana

ON THE FLAT PORTION OF THE TRAY SLOT. I COULDN'T READ IT THROUGH THE TRAY SLOT, AND WAS NOT ALLOWED TO READ THE REPORT, BEFORE BEING REQUIRED TO 1st SIGN IT. AFTER SIGNING IT, I WAS GIVEN THE OPPORTUNITY TO REQUEST WITNESSES IN MY DEFENSE.

C) I INFORMED THE GUARD THAT I DIDN'T KNOW WHAT THE ACCUSATION WAS. SHE INFORMED ME THE CHARGE WAS FOR A "MAJOR INFRACTION", "A #4233", AND THAT A #4233 WAS "UNAUTHORIZED COMMUNICATION THAT PRESENTED A THREAT TO THE SECURITY OF THE PRISON". BASED UPON THAT LIMETED INFORMATION, I REQUESTED MY UNIT MANAGER MICHELLE STHEY AS A WITNESS.

D) THEN THE GUARD TORE OFF MY COPY (A GOLDEN ROD COLORED CARBON COPY OF ORIGINAL) AND HANDED IT TO ME, AND I IMMEDIATLY SCANNED IT AND COMPLAINED THAT NO PART, ABSOLUTELY NO PART OF IT, WAS READABLE, AND I COULDN'T PREPARE A DEFENSE WITH THAT.

E) THE GUARD LAUGHED AND SAID THE GOLDENROD COPIES WERE NEVER LEGIBLE. I REQUESTED A LEGIBLE PHOTOCOPY OF THE ORIGINAL, AND WAS INSTRUCTED TO SEND A WRITTEN REQUEST TO "COMMAND POST".

F) NEXT, I ASKED FOR A COPY OF THE DISCIPLINARY POLICY, AND WAS DIRECTED TO SEND A WRITTEN REQUEST TO THE LIBRARY. THEN THE GUARD LEFT.

(3) WITHIN AN HOUR, I HAD SENT OUT WRITTEN REQUESTS TO BE PROVIDED WITH:

A) A LEGIBLE PHOTOCOPY OF THE DISCIPLINARY INFRACTION REPORT, TO BOTH THE COMMAND POST AND TO THE DISCIPLINARY OFFICE, AND

B) COPY OF THE DISCIPLINARY POLICY TO BOTH OF THE PRISON LIBRARIES, AND THE DISCIPLINARY OFFICE; SO THAT I COULD PREPARE FOR MY HEARING

(4) A) THEN I WROTE OUT A 2 PAGE STATEMENT TO SUBMIT AT MY SCHEDULED WEDNESDAY (9/12/18) DISCIPLINARY HEARING.

B) I DID THIS TO ENSURE MY TESTIMONY OF EVENTS WAS PRESERVED ON THE RECORD, BECAUSE THE DISCIPLINARY HEARINGS OFFICER (DHO) CHRISTINE SLAUGHTER HAS A BAD REPUTATION AMOUNG STAFF AND INMATES OF BEING BIASED AGAINST INMATES IN HER FINDINGS,

DISREGARDING THEIR TESTIMONY

C) STAFF HAVE NICKNAMED HER AS "MS. GUILTY" AND THEY NICKNAMED HER OFFICE AS "THE SLAUGHTER HOUSE".

D) MY THOUGHT WAS THAT WRITTEN TESTIMONY IS HARDER TO IGNORE. MY WRITTEN STATEMENT WAS MY DEFENSE TO AN UNSPECIFIED ACCUSATION OF UNAUTHORIZED COMMUNICATION THAT CREATED A THREAT TO PRISON SECURITY.

E) SINCE I DIDN'T KNOW THE SPECIFIC ACCUSATIONS MADE IN THE REPORT, I FOCUSED ON EXPLAINING WHY MY COMMUNICATION WITH BOSTWICK WAS NECESSARY AND NOT A THREAT TO PRISON SECURITY, BUT WAS SO ESSENTIAL TO MY SAFETY, THAT IT WOULD HAVE BEEN A THREAT TO MYSELF AND PRISON SECURITY, IF I HADN'T. AS I HAD BEEN AFRAID FOR MY PERSONAL SAFETY.

F) I ALSO INCLUDED A BRIEF CATCH-ALL LIST OF DEFENSES TO ANY POSSIBLE ALLEGATIONS I WAS NOT AWARE OF, (SUCH AS THREATNING, BEING IN AN UNAUTHORIZED AREA, OR BEHAVING IN ANY OTHER ALARMING, INSOLENT, OR DISRESPECTFUL MANNER). SINCE I DIDN'T KNOW THE EXACT ALLEGATION, I BLINDLY TRIED TO COVER ALL POSSIBILITIES IN MY 2 PAGE STATEMENT.

⑤ BETWEEN THE DATES OF FRIDAY 9/7/18, AND TUESDAY 9/11/18; STILL TRYING TO PREPARE MY DEFENSE FOR THE HEARING,

A) I SENT 2 MORE ADDITIONAL WRITTEN REQUESTS—FOR A LEGIBLE PHOTOCOPY OF THE DISCIPLINARY REPORT, AND A COPY OF THE DISCIPLINARY POLICY—ADDRESSED TO THE DISCIPLINARY OFFICE. (3 TOTAL)

B) I ALSO SENT AN ADDITIONAL WRITTEN REQUEST—FOR A LEGIBLE PHOTOCOPY OF THE DISCIPLINARY REPORT AND A COPY OF THE DISCIPLINARY POLICY—ADDRESSED TO COMMAND POST. (2 TOTAL)

C) I SENT ANOTHER WRITTEN REQUEST FOR A COPY OF THE DISCIPLINARY POLICY - ADDRESSED TO BOTH PRISON LIBRARIES. (4 TOTAL - 2 EACH LIBRARY)

D) I NEVER RECIEVED A RESPONSE FROM ANY OF THOSE WRITTEN REQUESTS.

⑥ ON WEDNESDAY 9/12/18, I WAS TAKEN TO AN OFFICE IN ADMINISTRATIVE SEGREGATION TO HAVE MY HEARING. THE DISCIPLINARY HEARINGS OFFICER (DHO)

WAS CHRISTINE SLAUGHTER.

A) I IMMEDIATLY INFORMED HER THAT I HAD NEVER RECIEVED A LEGIBLE PHOTOCOPY OF THE DISCIPLINARY REPORT, AND SHOWED HER MY ILLEGIBLE GOLDEN ROD CARBON COPY.

B) I TOLD HER I HAD MADE SEVERAL REQUESTS FOR A LEGIBLE COPY TO HER OFFICE, TO UNIT STAFF, AND TO COMMAND POST. THEN I TOLD HER ABOUT MY UNFULFILLED REQUESTS TO HER OFFICE, COMMAND POST, UNIT STAFF, AND BOTH LIBRARIES FOR THE DISCIPLINARY POLICY.

C) SHE CONFIRMED THAT SHE HAD RECIEVED MY REQUESTS FOR A LEGIBLE PHOTOCOPY OF THE DISCIPLINARY REPORT, AND AT THAT POINT HANDED ME AN EXTRA PHOTOCOPY SHE HAD BROUGHT WITH HER.

D) THEN I ASKED HER ABOUT THE REQUESTS FOR THE DISCIPLINARY POLICY THAT WAS MADE ON THE SAME WRITTEN REQUESTS AS FOR THE DISCIPLINARY REPORT, THAT SHE HAD JUST ACKNOWLEDGED RECIEVING. SHE MADE NO RESPONSE, AND GAVE ME A BLANK STARE.

E) I THEN ASKED HER, IF POLICY REQUIRED SERVICE OF THE DISCIPLINARY REPORT AT LEAST 24 HOURS PRIOR TO A SCHEDULED HEARING. SHE ANSWERED [INACCURATLY/UNTRUTHFULLY] THAT THE COPY I HAD JUST BEEN PROVIDED SATISFIED POLICY.

F) I THEN QUICKLY READ THE DISCIPLINARY INFRACTION REPORT AS SUBMITTED BY MARISA BOSTWICK, AND IT WAS NOT AT ALL WHAT I HAD EXPECTED.

G) NEXT, THE DHO INFORMED ME THAT SHE WAS AMENDING THE COMPLAINT. CHANGING THE INFRACTION FROM # 4233 - UNAUTHORIZED COMMUNICATION, TO #4235 - THREATENING.

H) I OBJECTED, INFORMING HER THAT MY DEFENSE HAD BEEN PREPARED AND FOCUSED ON UNAUTHORIZED COMMUNICATION. THAT THE TWO OFFENSES WERE COMPLETLY DIFFERENT, [BOTH ARE MAJOR INFRACTIONS, PER POLICY "4233- UNAUTHORIZED COMMUNICATION THAT PRESENTS A THREAT TO THE SECURITY OF THE FACILITY." AND "#4235 - THREATENING ANY OTHER PERSON TO INCLUDE STAFF, VOLUNTEERS, VISITORS, VENDORS, MEMBERS OF THE PUBLIC, ETC. WITH BODILY HARM. VERBAL OR WRITTEN STATEMENTS OR ENGAGING IN PHYSICAL CONDUCT CAUSING FEAR IN ANOTHER PERSON."], AND CHANGED THE NATURE OF MY DEFENSE, AND BETWEEN THAT AND THE NEW KNOWLEDGE OF THE ALLEGATIONS CONTAINED IN THE DISCIPLINARY REPORT,

(5)



MY RELEVANT WITNESSES AND WRITTEN STATEMENT WOULD NEED TO BE UPDATED TO AFFORD A MEANINGFUL DEFENSE.

I) I REQUESTED A CONTINUANCE TO PREPARE A NEW WRITTEN STATEMENT, AND GIVE HER TIME TO INTERVIEW MY NEWLY REQUESTED WITNESSES, AND CHECK THE SURVEILLANCE CAMERAS. THE DHO DENIED MY REQUEST.

J) I ASKED HER IF THE HEARING WAS TO BE AUDIO RECORDED, AND SHE SAID SHE DOESN'T RECORD THE HEARINGS.

K) THEN SHE ASKED ME TO WAIT WHILE SHE FILLED OUT HER DISCIPLINARY HEARING DECISION FORM. I WATCHED HER CAREFULLY WHILE I WAITED, AND OBSERVED THAT SHE HAD PRECOMPLETED THE ENTIRE LOWER 2/3RDS OF THE FORM, WHICH WAS SUSPICIOUS TO ME.

L) THEN SHE ASKED ME FOR MY VERBAL TESTIMONY FOR HER PAPERWORK. I HANDED HER MY PREPARED WRITTEN STATEMENT, AND SUPPLEMENTED THAT AS BEST I COULD WITH VERBAL TESTIMONY OF WHAT I DISPUTED IN THE ALLEGATIONS AS WRITTEN BY BOSTWICK IN THE DISCIPLINARY REPORT, THAT I HAD READ FOR THE 1ST TIME ONLY 2 MINUTES BEFORE. EVEN THOUGH CHANGING THE INFRACTION HAD INVALIDATED MY ORIGINALLY REQUESTED WITNESS ON 9/7/18 [UNIT MANAGER MICHELLE STHEY], I ASKED AND LEARNED THAT THE DHO HAD NOT SPOKEN TO MY WITNESS PRIOR TO THE HEARING ANYWAY.

M) I INFORMED HER OF WHAT WITNESSES I WISHED HER TO SPEAK WITH, AND WHY I HAD REASON TO BELIEVE THEY WERE RELEVANT.

N) I ASKED HER TO CHECK SURVIELLANCE CAMERAS COVERING THE LIBRARY, HALLWAY, CLASSROOMS, WITH ANGLES COVERING WHERE I HAD BEEN, AND WHERE THE POTENTIAL WITNESSES WERE; FOR THE DURATION OF THE EVENTS AS DESCRIBED IN MY WRITTEN STATEMENT

O) I REQUESTED THAT SHE DO BOTH OF THESE INVESTIGATIVE ACTIONS BEFORE ENTERING A VERDICT.

P) THEN I ASKED HER FOR PERMISSION TO DOCUMENT MY OWN STATEMENT ON HER DISCIPLINARY HEARING DECISION FORM, AND WAS SHARPLY REBUKED.

Q) SHE MADE HER OWN NOTATIONS, AND I AGAIN OBSERVED HER, AND HER PEN, THAT THIS TIME NEVER AGAIN WENT BELOW THE TOP 1/3RD OF THE PAGE, AS THE REST OF THE DISCIPLINARY HEARING DECISION FORM (BOTTOM 2/3RD) HAD ALREADY BEEN COMPLETED BEFORE COLLECTING MY

6



TESTIMONY (EITHER VERBAL OR WRITTEN).

R) WHEN SHE WAS FINISHED RECORDING MY DEFENSE STATEMENT, SHE ANNOUNCED SHE HAD FOUND ME GUILTY AND THAT I WAS RECIEVING 15 DAYS IN DETENTION, WITH 5 DAYS CREDITED, AND I WAS REFERED TO THE UNIT MANAGEMENT TEAM FOR THE POSSIBLE RECLASSIFICATION OF CUSTODY LEVEL AND HOUSING.

S) I ASKED HER HOW SHE COULD FIND ME GUILTY WITHOUT SPEAKING TO ANY OF MY REQUESTED WITNESSES OR CHECKING ANY SURVIELLANCE CAMERA FOOTAGE FIRST.

T) HER ANSWER WAS "STAFF NEVER LIE, SO IF YOUR WRITTEN UP, YOU MUST BE GUILTY". WHICH SHOWS BIAS AND PRECLUDES ANY POSSIBILITY OF HER AS AN IMPARTIAL DECISION MAKER.

U) I SIGNED HER DISCIPLINARY HEARING DECISION FORM, AND REQUESTED TO APPEAL HER DECISION.

V) I EXAMINED HER FORM, MAKING NOTE OF IN WHICH AREAS SHE HAD BEEN WRITING ON THE PAGE BEFORE TAKING MY TESTIMONY AND OBSERVED THAT SHE HAD INDEED ENTERED HER GUILTY VERDICT, AND IMPOSED ~~HER~~ MY DISCIPLINARY SANCTIONS BEFORE COLLECTING MY TESTIMONY. THAT'S WHAT THE BOTTOM 2/3 RDS OF THE DISCIPLINARY HEARING DECISION FORM LAYOUT CONTAINED. IF I HAD BEEN ALLOWED TO RECORD MY OWN STATEMENT IN THE DESIGNATED TOP 1/3 RD OF THE FORM, I WOULD HAVE HAD THE EVIDENCE OF THIS MISCONDUCT IN MY HANDS.

W) AS FOR MY STATEMENT AS SHE RECORDED IT, THE DHO ENTERED INTO THE RECORD ONLY WHAT SHE WANTED TO BE RELEVANT. NOT WHAT I WANTED PRESERVED ON THE RECORD. DHO OMITTED EVERYTHING THAT SHOWED BIAS, OR DUE PROCESS VIOLATIONS UNDER POLICY (OR THE CONSTITUTION).

X) AS I RETURNED HER CLIPBOARD, I ASKED HER SARCASTICALLY IF SHE NORMALLY ENTERED A GUILTY VERDICT AND DISCIPLINARY SANCTIONS BEFORE HEARING AN INMATE'S TESTIMONY. SHE IGNORED ME AND HANDED ME A DISCIPLINARY APPEAL FORM.

Y) I WAS RETURNED TO MY CELL.

7) UPON RETURNING TO MY CELL, I COMPLETED THE DISCIPLINARY APPEAL FORM. DUE TO ITS LIMITED SPACE PROVIDED:

A) UNDER SUBSECTIONS -1-(EVIDENCE) AND SUBSECTIONS -3-(SANCTIONS), I REFERRED THE ASSOCIATE WARDEN OF APPEAL TO READ THE 2 PAGE HANDWRITTEN STATEMENT, ALREADY IN DHO CHRISTINE SLAUGHTER'S CUSTODY, TO DETERMINE THE MERITS OF THE EVIDENCE AND SANCTIONS IMPOSED.

B) BUT UNDER SUBSECTION -2-(DUE PROCESS PROCEDURES), I ELECTED TO WRITE ANOTHER 2 PAGE STATEMENT FOCUSING PRIMARILY ON DISCIPLINARY PROCEDURES I OBSERVED WERE NOT FOLLOWED AT THAT HEARING. I RAISED THE SUBSEQUENT DUE PROCESS ISSUES:

C) THAT I HAD NOT RECIEVED A LEGIBLE COPY OF THE 9/7/18 DISCIPLINARY INFRACTION REPORT, UNTIL I WAS ACTUALLY AT THE 9/12/18 DISCIPLINARY HEARING.

D) THAT I HAD A STRONG BELIEF THAT BOTH POLICY AND CASELAW REQUIRED A LEGIBLE COPY BE PROVIDED TO ME TO USE IN PREPARING MY DEFENSE, AT LEAST 24 HOURS PRIOR TO AN ACTUAL HEARING. [POLICY SPECIFICALLY REQUIRES IT WITHIN 24 HOURS AFTER BEING PLACED IN PRE HEARING DISCIPLINARY CONFINEMENT, AND AGAIN 24 HOURS PRIOR TO THE ACTUAL HEARING].

E) THAT I WAS NOT PERMITTED A COPY OF THE DISCIPLINARY POLICY PRIOR TO THE HEARING TO PREPARE MY DEFENSE, OR USE AT THE HEARING.

F) THAT DISCIPLINARY REPORTS ARE SCREENED FOR ACCURACY PRIOR TO SUBMISSION TO THE DISCIPLINARY OFFICE. THIS REPORT WAS SCREENED TWICE. BY THE SHIFT SUPERVISOR CALLAHAN ON THE 7TH, AND AGAIN BY CAPTAIN ZUBER ON THE 10TH, WITHOUT CHANGES BEING REQUIRED TO THE INFRACTIONS CITED. THE DHO CHANGING THE COMPLAINT FROM #4233 - UNAUTHORIZED COMMUNICATION, TO #4235 - THREATENING; WAS A VIOLATION OF POLICY AND CASELAW, THAT INJURED MY ABILITY TO PRESENT A DEFENSE, AS THE TWO INFRACTIONS ARE NOT SIMILAR IN ELEMENTS.

G) THAT THE HEARING WAS NOT RECORDED TO PRESERVE INTEGRITY OF PROCEEDINGS, AND FOR AVAILABILITY DURING APEALATTE REVIEW.

H) THE DHO NEVER SPOKE WITH THE WITNESS (UNIT MANAGER MICHELLE STHEY) I HAD REQUESTED ON 9/7/18, AND WAS DOCUMENTED ON THE DISCIPLINARY INFRACTION REPORT.

I) DENIED MY REQUEST FOR A CONTINUANCE SO THAT I MAY PROPERLY PREPARE A DEFENSE BASED ON THE ACTUAL COPY OF THE DISCIPLINARY REPORT, AND

ALLOW HER TO SPEAK WITH INMATE WITNESSES WHO WERE WITHIN EARSHOT OF THE ALLEGED INCIDENT; OR REVIEW CAMERA FOOTAGE OF THE LIBRARY, HALLWAYS, AND CLASSROOMS THAT WOULD HAVE COVERED MY ACTIONS AND LOCATIONS OF POTENTIAL WITNESSES TO CORROBORATE EVENTS AS DESCRIBED IN MY WRITTEN STATEMENT AND VERBAL TESTIMONY (WITNESSES AND EVIDENCE I COULD NOT EXPECT TO REQUEST OR IDENTIFY IN ADVANCE WITHOUT THE AID OF THE DISCIPLINARY REPORT TO PREPARE WITH).

J) THAT THE DISCIPLINARY REPORT DIDN'T SPECIFY ANY ACTUAL VERBAL OR PHYSICAL THREATS MADE AGAINST BOSTWICK.

K) THAT I NEVER ACTUALLY UNDERSTOOD THE CHARGES PRIOR TO THE HEARING, AND THAT STAFF SHOULDN'T BE MARKING OFF THE FORMS IN THE AFFIRMATIVE, WHEN I DIDN'T (THEN REQUIRING MY SIGNATURE BY DIRECT ORDER).

L) THAT THE DHO HAD REFUSED TO ALLOW ME TO RECORD MY OWN STATEMENT ON THE DISCIPLINARY HEARING DECISION FORM. ONLY DOCUMENTED WHAT SHE WANTED, AND OMITTED WHAT SHE DIDN'T;

M) AFTER HAVING ALREADY OFFICIALLY DOCUMENTING ME AS GUILTY AND IMPOSED SANCTIONS BEFORE EVER RECIEVING MY TESTIMONY.

N) THAT HER STATEMENT TO ME (VERBATIM) "STAFF NEVER LIE, SO IF YOUR WRITTEN UP, YOU MUST BE GUILTY", COMBINED WITH HER NOTORIOUS REPUTATION FOR BEING PREJUDICED AGAINST INMATES, EARNING HER THE NICKNAME "MS. GUILTY" AND HER OFFICE AS THE "SLAUGHTER HOUSE" AMOUNG STAFF AND INMATES ALIKE; REFLECTED HER LACK OF OBLIGATED IMPARTIALITY AS A HEARINGS OFFICER.

O) THEN I RAISED THE LACK OF SPECIFICITY IN HER WRITTEN JUSTIFICATION FOR HER FINDINGS, AND OMISSION OF ANY COMMENTARY ON MY DEFENSE, OR REQUESTED EVIDENCE, OR REQUESTED WITNESSES, I RAISED AT THE HEARING. PREVENTING ANY MEANINGFUL ~~APPEAL~~ APPEALATTE REVIEW ~~[illegible]~~ OF HER REASONING AND JUDGEMENT. [NO EXPLANATION FOR PRE HEARING INVESTIGATION NOT BEING DONE. OR WHY BOSTWICKS WRITTEN COMPLAINT IS BY DEFAULT MORE CREDIBLE THAN MY WRITTEN AND VERBAL TESTIMONY. OR WHY REQUEST FOR CONTINUANCE, OR INMATE WITNESSES, OR CAMERA EVIDENCE WAS DENIED OR NOT

REQUIRED FOR DUE PROCESS, ETC.].

P) I PLACED THIS 2 PAGE HANDWRITTEN APPEAL STATEMENT WITH THE DISCIPLINARY APPEAL FORM IN A SEALED ENVELOPE ADDRESSED "ASSOCIATE WARDEN OF DISCIPLINARY APPEAL", THEN GAVE IT TO A UNIT GUARD THAT SAME DAY (WEDNESDAY 9/12/18) FOR DELIVERY.

(8) ON FRIDAY 9/14/18, I WAS AWOKEN OUT OF A DEAD SLEEP AND WAS TAKEN FROM MY CELL TO AN OFFICE IN ADMINISTRATIVE HOUSING. WHEN I ARRIVED IN THE OFFICE, DHO CHRISTINE SLAUGHTER WAS WAITING. I ASKED IF SHE WAS THERE BECAUSE MY SUBMITTED APPEAL HAD OVERTURNED THE GUILTY VERDICT.

A) I WAS INFORMED SHE HAD MY APPEAL WITH HER. THEN SHE HELD IT UP AND SHOWED IT TO ME, AND I WAS INFORMED THAT SHE HADN'T SUBMITTED IT TO THE ASSOCIATE WARDEN TO WHOM IT WAS ADDRESSED.

B) THAT SHE WAS THERE TO CONDUCT A REHEARING. I ASKED WHY I HADN'T BEEN GIVEN ADVANCED NOTICE OF THIS HEARING TO PREPARE A DEFENSE AS REQUIRED BY POLICY AND CASELAW. I RECIEVED NO ANSWER.

C) I ASKED IF SHE HAD SPOKEN WITH ANY STAFF OR INMATE WITNESSES OR REVIEWED THE SURVIELLANCE FOOTAGE THAT I HAD PREVIOUSLY REQUESTED AT MY ORIGINAL HEARING. SHE STATED THAT SHE HAD NOT. I ASKED WHY, AND RECIEVED NO ANSWER.

D) I SAT QUIETLY, WATCHING WHILE SHE COMPLETED THE DISCIPLINARY HEARING DECISION FORM IN ITS ENTIRETY. I WAS NEVER ASKED TO MAKE A STATEMENT IN MY DEFENSE. WHEN SHE FINISHED COMPLETING THE PAPERWORK, SHE ANNOUNCED THAT SHE HAD INCREASED MY DISCIPLINARY CONFINEMENT FROM 15 DAYS TO 25 DAYS, AND I WAS TO BE REFERED TO THE UNIT MANAGEMENT TEAM FOR POSSIBLE RECLASSIFICATION OF MY CUSTODY LEVEL AND HOUSING.

E) WHEN SHE HAD FINISHED SAYING THIS, I ASKED HER WHY THE "REHEARING" TO INCREASE SANCTIONS. SHE TOLD ME THAT SHE HAD SPOKEN WITH BOSTWICK, AND THAT THE "SITUATION WAS MORE SERIOUS" THAN SHE HAD ORIGINALLY THOUGHT.

F) I ASKED HER TO EXPLAIN WHAT THE COMPLAINING WITNESS - BOSTWICK -

HAD SAID TO HER, AND HOW IT WAS MORE SERIOUS THAN HER ORIGINAL WRITTEN REPORT DRAFTED CONTEMPORANEOUSLY AFTER THE ALLEGED INCIDENT. THAT ANY WITNESS WHO, A WEEK AFTER AN ALLEGED INCIDENT, SIGNIFICANTLY ALTERS OR EMBELLISHES, ANY CONTEMPORANEOUS STATEMENT, RAISES ISSUES OF CREDIBILITY THAT DUE PROCESS RIGHTS SHOULD AFFORD ME THE OPPORTUNITY TO CHALLANGE. INSTEAD OF ANSWERING, SHE TOLD ME THAT THE HEARING WAS OVER. I RESPONDED SARCASTICALLY THAT "I WASN'T AWARE IT HAD EVER BEGUN".

G) I SIGNED HER "RE-HEARING" DISCIPLINARY HEARING DECISION FORM, RECIEVED AN APPEAL FORM, AND WAS TAKEN BACK TO MY CELL.

(9) ON FRIDAY 9/14/18, I SUBMITTED MY 2ND DISCIPLINARY APPEAL TO THE ASSOCIATE WARDEN AND I INCLUDED ANOTHER 2-PAGE WRITTEN APPEAL STATEMENT, WHICH WAS SUBSTANATIVELY A REDRAFT OF ALL THE SAME ISSUES I HAD RAISED IN MY 1ST DISCIPLINARY APPEAL. [PETITIONER INCORPORATES THOSE ISSUES BY REFERENCE TO PARAGRAPH #7, A-P, OF THIS SWORN DECLARATORY AFFIDAVIT (SDA)] WITH THE ADDITION OF THE NEWLY CREATED ISSUES PERTAINING TO:

A) A "RE-HEARING" WITHOUT NOTICE. (NOTICE OF HEARING REQUIRED BY POLICY).

B) THAT MY 1ST APPEAL HAD NOT BEEN SUBMITTED TO THE ASSOCIATE WARDEN BY THE DHO.

C) I STILL HAD NO COPY OF THE DISCIPLINARY POLICY I KEPT REQUESTING

D) THAT THE DHO STILL HADN'T SPOKEN WITH ANY OF MY REQUESTED POTENTIAL WITNESSES, OR...

E) VIEWED ANY REQUESTED SURVIELLANCE VIDEO,

F) THAT I WAS NEVER TOLD THE SUBSTANATIVE CONTENTS OF BOSTWICK'S SECRET TESTIMONY TO THE DHO,

G) I WAS NOT GIVEN ANY OPPORTUNITY TO RAISE A DEFENSE, OR CHALLANGE THE CREDIBILITY OF BOSTWICK'S CHANGING ALLEGATIONS.

H) THAT THE DHO WASN'T IMPARTIAL HAVING ALREADY DECIDED GUILT 2 DAYS BEFORE.

I) A RE-HEARING OR INCREASE IN SANCTIONS ISN'T PROVIDED FOR IN POLICY.

J) THAT THE INCREASED SANCTIONS WERE EXCESSIVE.

K) I SEALED THE DISCIPLINARY APPEAL FORM WITH THE 2-PAGE APPEAL STATEMENT IN A BLANK ENVELOPE ADDRESSED TO THE "ASSOCIATE WARDEN OF DISCIPLINARY APPEALS ONLY!!".

10) ON MONDAY 9/17/18, I WAS TAKEN TO THE RECLASSIFICATION HEARING IN THE OFFICE OF THE ADMINISTRATIVE SEGREGATION SECURITY TECH. THE HEARING WAS CONDUCTED BY B-UNIT SECURITY TECH TERRANCE JOHNSON.

A) THE HEARING WAS IN RESPONSE TO THE DHO'S GUILTY DISCIPLINARY VERDICT.

B) FOLLOWING A STRUCTURED POINT SYSTEM, I WAS GIVEN 6 POINTS FOR THE WRITE-UP, IN ADDITION TO THE 11 POINTS I ALREADY HAD FOR SEVERITY OF CRIME, AND LENGTH OF SENTENCE. I HAD NO OTHER DISCIPLINEARY POINTS, PRIOR TO THIS HEARING.

C) GIVING ME A TOTAL OF 17 POINTS, WHICH IN TURN RECLASSIFIED ME TO CLOSE CUSTODY, AND GENERAL POPULATION IN HIGH SIDE.

D) THAT THIS WRITE UP, WOULD BE COUNTED AGAINST ME FOR 3 YEARS, AT WHICH TIME THOSE POINTS WOULD DROP OFF, AND I WOULD BE CONSIDERED FOR A POSSIBLE RECLASSIFICATION BACK TO MEDIUM CUSTODY AND LOWSIDE HOUSING. I SIGNED THE PAPERWORK. RETURN TO CELL.

E) I SUBMITTED AN APPEAL THAT AFTERNOON. NOT CHALLANGING THE CUSTODY INCREASE, AS THAT WAS ACCORDING TO THE PROCEDURAL AND IMPARTIAL POINT SYSTEM. BUT TO CHALLANGE OTHER INACCURACIES RELEVANT TO ISSUES OF TREATMENT, AND TO REQUEST HOUSING IN HIGH UNIT-2, RATHER THAN UNIT-1.

11) ON WEDNESDAY 9/19/18, ASSOCIATE WARDEN THOMAS WILSON DENIED MY "2ND" DISCIPLINARY APPEAL.

A) CHECKING THE BOXES ON THE STANDARDIZED FORM: "☑ SUFFICIENT EVIDENCE AND ~~DOCUMENTATION~~ TO SUPPORT THE FINDING, ☑ SUBSTANTIAL COMPLIANCE WITH APPLICABLE DISCIPLINARY PROCEDURES", AND "☑ SANCTIONS IMPOSED PROPORTIONATE TO THE RULE VIOLATION".

B) HIS ONLY WRITTEN COMMENT IN THE OBLIGATED SPACE WAS SIMPLY "THE DECISION OF THE DHO IS CORRECT". NOTHING TO ADDRESS THE PLETHORA OF SUBSTANTIAL DUE PROCESS VIOLATIONS RAISED IN BOTH OF MY

2-PAGE APPEAL STATEMENTS, OR REBUTTAL TESTIMONY IN MY OTHER 2-PAGE TESTIMONIAL DEFENSE STATEMENT, INITIALLY SUBMITTED TO THE DHO AT MY 1ST HEARING.

C) MY UNDERSTANDING IS THAT AW WILSON OVERSEES THE EDUCATION DEPARTMENT, EDUCATION DIRECTOR MARISA BOSTWICK RUNS.

D) HE NEVER ADDRESSED ANY OF THE OVERWHELMING DUE PROCESS VIOLATIONS I EXPERIENCED [INCORPORATING BY REFERENCE TO PARAGRAPHS #7 A-P, AND #9 A-K] AND EXHAUSTIVELY DOCUMENTED IN BOTH APPEALS. NO INDICATION OF AN ACTUAL INDEPENDENT MEANINGFUL REVIEW.

(12) ON TUESDAY 10/2/18, I COMPLETED MY 25 DAYS IN DISCIPLINARY CONFINEMENT, EXPECTING TO BE RELEASED TO MY RECLASSIFIED STATUS, AS CLOSE CUSTODY GENERAL POPULATION HIGH SIDE HOUSING.

A) I EXPECTED TO RECIEVE ALL OF MY PERSONNAL PROPERTY BACK FROM STORAGE IN THE PROPERTY DEPARTMENT.

B) INSTEAD I WAS TAKEN TO LEVEL-1 ADMINISTRATIVE SEGREGATION (THE MOST RESTRICTIVE IN AD-SEG), AND WAS INFORMED I HAD BEEN RECLASSIFIED (WITHOUT ANY NOTICE OR HEARING AS OBLIGATED BY POLICY AND/OR STANDARD PROCEDURE) TO MAX CUSTODY.

C) I FILED AN APPEAL OF CLASSIFICATION ACTION, THAT DAY.

D) BUT I HAD NO IDEA WHY, OR WHO HAD RECLASSIFIED ME TO AN EXTREMELY RESTRICTIVE CUSTODY LEVEL THAT I DID NOT OBJECTIVELY SCORE AT, SO I ASSUMED AT THE TIME IT WAS FOR SEPERATION NEEDS.

E) THAT ASSUMPTION FORMED THE INACCURATE BASIS OF MY APPEAL ARGUMENTS. AN APPEAL FILED ON BLIND GUESSES; OR ACTIONS THAT IMPOSE ATYPICAL OR SIGNIFICANT HARDSHIPS WITHOUT PRIOR HEARINGS OR NOTICE; IS NOT DUE PROCESS, IN VIOLATION OF POLICY.

(13) ON FRIDAY 10/5/18, AFTER NEARLY A MONTH OF ~~[illegible]~~ PERSISTENT REQUESTING, I FINALLY RECIEVED COPIES OF POLICY MSP 3.4.1 INSTITUTIONAL DISCIPLINE, AND MSP 4.2.1 INMATE CLASSIFICATION SYSTEM. RECIEVED TOO LATE TO ASSIST IN DISCIPLINARY HEARINGS, AND ITS APPEALS; OR CLASSIFICATION HEARING (OR LACK OF) OR ITS APPEALS.

(14) ON SUNDAY 10/7/18,

A) PROPERTY OFFICER DARCY HUNT DELIVERED LIMETED PERSONNAL PROPERTY BACK. HE INFORMED ME THAT THE BALANCE OF MY UNDELIVERED PROPERTY WOULD BE DISCARDED IF NOT MAILED OUT WITHIN 30 DAYS.

B) THIS WAS A CONSEQUENCE UNDER THE PROPERTY RESTRICTIONS ATTENDING MAX CUSTODY AND LEVEL-1 AD-SEG HOUSING, WHICH WAS IN TURN A CONSEQUENCE OF DISCIPLINARY GUILTY VERDICT, AND CUSTODY OVERIDE TO MAX CUSTODY - ADSEG.

C) I AM INDIGENT AND LACK FUNDS TO MAIL OUT MY PERSONNAL PROPERTY, LEAVING FORCED DISPOSAL AS THE ONLY OPTION.

(15) ON SUNDAY 10/7/18, I WAS PROVIDED WITH PROPERTY INVENTORY DOCUMENTATION BY THE PROPERTY OFFICER.

A) I SPENT SEVERAL HOURS COMPARING THEM AGAINST EACH OTHER, AGAINST WHAT I RECIEVED, AGAINST MY OWN MEMORY, AND AGAINST POLICY M.S.P 4.1.3 - INMATE PERSONNAL PROPERTY -

B) I DISCOVERED THAT SEVERAL ITEMS I WAS ALLOWED TO POSSES UNDER MAX LEVEL-1 PROPERTY RESTRICTION - SOLD ON CANTEEN - WAS WITH MY WITHELD PROPERTY.

C) THAT ON FRIDAY 9/17/18, THE NIGHT I WAS TAKEN TO PRE HEARING DISCIPLINARY CONFINEMENT, CORRECTIONAL OFFICER BEASLEY INVENTORIED MY PERSONNAL PROPERTY, AND DISCARDED AUTHORIZED PROPERTY AS IF IT WAS CONTRABAND, AND AS SUCH FAILED TO FOLLOW POLICY 3.1.17b - CONTRABAND CONTROL - BY NOT DOCUMENTING THE ITEMS ON THE REQUIRED - SUMMARY ACTION / CELL SEARCH / PROPERTY RECIEPT - AND NOT SAVING THE ITEMS FOR A DUE PROCESS HEARING TO ALLOW ME TO ARGUE WHY THE ITEMS WERE NOT ACTUALLY CONTRABAND AND WERE AVAILABLE ON CANTEEN, OR OTHERWISE PERMITTED UNDER POLICY.

D) THAT PERSONNAL MAIL (UNIQUE PERSONNAL PROPERTY) CONTAINING DRAWINGS / SKETCHES FROM FRIENDS AND FAMILY HAD BEEN CONFISCATED BY THE PROPERTY OFFICER. MATERIAL THAT WAS NOT RELATED TO MY HOBBY PERMIT (ART), AND SHOULD NOT HAVE BEEN CONFISCATED PENDING





FORCED DESTRUCTION.

E) THAT POSTAL DELIVERY OF MY SUBSCRIPTION MAGAZINES HAD BEEN WITHELD WHILE IN DISCIPLINARY CONFINEMENT. INSTEAD THEY HAD BEEN PLACED WITH MY STORED PERSONNAL PROPERTY AND ALLOWED TO PILE UP. SINCE MY STORED PROPERTY ALREADY HAD 14 OUT OF THE POLICY LIMET OF 15 PUBLICATIONS, THESE MAGAZINE SUBSCRIPTIONS BECAME EXCESS CONTRABAND, AND WERE DISCARDED. UNDER NORMAL MAILROOM DELIVERY, I READ THEM AS THEY COME IN AND DISCARD THEM THE SAME DAY SO THEY DON'T BECOME EXCESS CONTRABAND.

F) THAT 9 BOOKS (SOFTCOVER) (UNIQUE PERSONNAL AND RELIGIOUS PROPERTY) WERE HELD BACK IN MY PROPERTY FOR FORCED DISPOSAL. GENERAL POPULATION INMATES ARE PERMITTED 15 PUBLICATIONS OF ANY COMBINATION OF BOOKS, MAGAZINES, OR NEWSPAPERS, PLUS 1 DICTIONARY. I HAD 14 SOFTCOVER BOOKS, AND 1 SOFTCOVER DICTIONARY IN MY STORED PROPERTY, WHEN PROPERTY OFFICER DARCY HUNT BROUGHT ME MY PROPERTY. BUT IN AD-SEG THE PUBLICATION RESTRICTION IS 5 (SOFTCOVER) PERSONNAL BOOKS, 3 STATE ISSUED BOOKS, 3 MAGAZINES, 2 NEWSPAPERS, AND 1 RELIGIOUS PUBLICATION (14 TOTAL). UNDER THIS RESTRICTIVE ITEMIZED BREAKDOWN, I SUFFERED STAFF IMPOSING THEIR DISCRETION (AND CENSORSHIP) ON WHICH PUBLICATIONS I CAN RECIEVE, OR DISCARD; AND THE LIMET TO 1 RELIGIOUS PUBLICATION IS A SUBSTANTIAL BURDEN ON MY RELIGIOUS BELIEFS.

G) POLICY MSP 4.1.3 - INMATE PERSONNAL PROPERTY - REQUIRES THE ALLOWABLE PROPERTY MATRIX'S TO BE UPDATED ANUALLY. BUT WAS LAST UPDATED ON 11/4/2014. ANY STAFF USING THIS EXPIRED POLICY PROPERTY MATRIX WOULD TREAT AUTHORIZED PROPERTY SOLD ON PRISON CANTEEN, OR AUTHORIZED MEDICAL ITEMS, ETC, AS CONTRABAND. THIS IS THE LOGICAL EXPLANATION FOR WHY PROPERTY WAS WITHELD AS DESCRIBED IN -15B- AND WHY IN -15C- C.O. BEASLEY TREATED AUTHORIZED PROPERTY ITEMS AS CONTRABAND.

(16) ON WEDNESDAY 10/10/18, I RECIEVED MY ADMINISTRATIVE SEGREGATION "LOCKED HOUSING PLAN":

A) WHICH OUTLINED THAT I WOULD BE REQUIRED TO SERVE 60 DAYS AT LEVEL-1, 90 DAYS AT LEVEL-2, AND 90 DAYS AT LEVEL-3; BEFORE I CAN ENTER CLOSE CUSTODY GENERAL POPULATION ON 6/2/19.

B) THIS IS A VIOLATION OF POLICY 4.2.1 - INMATE CLASSIFICATION SYSTEM - WHICH REQUIRES INMATES IN ADMINISTRATIVE SEGREGATION ARE TO BE "CONSIDERED" FOR GENERAL POPULATION EVERY 30 DAYS, A CONSIDERATION I AM BARRED FROM RECIEVING, WITHOUT JUSTIFIABLE EXPLANATION, OR DUE PROCESS.

(17) ON MONDAY 10/15/18, AND AGAIN TUESDAY 10/16/18, I SENT THE HOBBY DIRECTOR KAREN HORSWELL REQUESTS TO CLARIFY HER INTERPRETATION AND APPLICATION OF POLICY MSP 5.5.4 - HOBBY PROGRAM -.

A) THE POLICY REQUIRES ANY INMATE WHO RECIEVES A CUSTODY INCREASE FOR A DISCIPLINARY INFRACTION TO LOSE ~~THE~~ THEIR HOBBY PERMIT AND HOBBY MATERIALS.

B) POLICY DOES NOT ACTUALLY DEFINE WHAT IS, OR IS NOT ART. THE HOBBY DIRECTOR INTERPRETS THE POLICY AS PROHIBITING SIMPLE SKETCHES OR DRAWINGS WITHOUT AN ART PERMIT, EVEN IF THEY DO NOT INCORPORATE SPECIAL ART SUPPLIES, OR ONLY USE PLAIN PAPER AND PENCIL/PEN. THAT ACCORDING TO HER EVEN THIS BASIC FORM OF EXPRESSION IS A PRIVILAGE AND NOT A RIGHT.

C) THIS IS WHY PROPERTY OFFICER DARCY HUNT WITHELD MY SKETCHES AND DRAWINGS I HAD RECIEVED IN THE MAIL, AND WAS IN WITH MY MAIL. [INCORPORATED BY REFERENCE TO PARAGRAPH 15,D]

(18) ON SATURDAY 11/10/18, I RECIEVED A RESPONSE TO MY CLASSIFICATION APPEAL SUBMITTED ON 10/2/18 [INCORPORATED BY REFERENCE TO PARAGRAPH #12,C,D,E] (RESPONSE DATED 11/5/18): "YOUR #4235 IS WHAT IS DRIVING ~~THE~~ PLACEMENT. YOUR BEHAVIOR MAKES YOUR PLACEMENT APPROPRIATE AT THIS TIME. DENIED". (AUTHOR UNKNOWN - SIGNATURE ILLEGIBLE).

(19) BETWEEN 10/7/18, AND 11/18/18:

A) A COMBINED TOTAL OF 19 INFORMAL GRIEVANCES WERE INITIATED,

ALL PERTAINING TO THE UNCONSTITUTIONAL ACTS, UNLAWFUL ACTS, POLICY VIOLATIONS, OR UNCONSTITUTIONAL POLICIES / PROCEDURES UNDER WHICH I HAVE SUFFERED OR BEEN HARMED, AS DESCRIBED WITHIN THIS EXHAUSTIVE SWORN DECLARATORY AFFIDAVIT.

B) AN EXPANDED LEGAL ARGUMENT IS ADDRESSED IN THE LEGAL MEMORANDUM OF THIS INSTRUMENT.

C) THE PRISON GRIEVANCE PROCESS HAS 4-LEVELS (INFORMAL, FORMAL, WARDEN APPEAL, DOC DIRECTOR APPEAL) AND CAN TAKE UP TO 6-MONTHS TO COMPLETLY EXHAUST ALL AVAILABLE REMIDIES, BEFORE INITIATING ANY LEGAL ACTION IN STATE OR FEDERAL COURT.

(20) THE DEFENDANT - JIM SALMONSON - IS KNOWN TO ME AS THE INTERIM WARDEN AT THE DEER LODGE MONTANA STATE PRISON.

A) IN HIS OFFICIAL CAPACITY HE IS THE LEAD SUPERVISORY ADMINISTRATOR OVER ALL STAFF, ALL POLICIES, AND IS THE LAST TO REVIEW ALL GRIEVANCES BEFORE THE FINAL GRIEVANCE APPEAL LEVEL TO THE D.O.C DIRECTOR IN HELENA.

B) HE HAS THE AUTHORITY TO SUPERVISE, DELEGATE, INVESTIGATE, REPREMAND, OR RESOLVE ANY OF THE AFORE MENTIONED ISSUES IN THIS AFFIDAVIT.

C) AS SUCH, HIS OFFICIAL CAPACITY ENABLES HIM TO UNIQUELY ENSURE ANY TEMPORARY RESTRAINING ORDER, OR PRELIMINARY INJUNCTION ORDERED BY THIS COURT IS OBSERVED THROUGHOUT THE VARIOUS DEPARTMENTS IN THE PRISON ADMINISTRATION.

II. NOW ASSERTS THE PETITIONER (KIBBY), WHO BASED UPON THE FOREGOING PARAGRAPHS UNDER SECTION (I.) OF THIS DECLARATORY AFFIDAVIT, THAT THE FORGOING INFORMATION IS TRUTHFUL AND ACCURATE BASED UPON THE PETITIONERS BEST AVAILABLE INFORMATION AND PERSONNAL BELIEF. PURSUANT TO 28U.SC §1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. Nathaniel Z. Kibby

11/30/2018

III. NOW COMES THE PETITIONER (KIBBY) WHO SUBMITS THE FOLLOWING MEMORANDUM OF LAW AND ANALYSIS (A) IN SUPPORT OF HIS PRECEEDING SWORN DECLARATORY AFFIDAVIT, (B) IN SUPPORT OF THE PETITIONERS EMERGENCY PETITION FOR A TEMPORARY RESTRAINING ORDER, AND (C) PRELIMINARY INJUNCTION, AND (D) SUBSEQUENT PETITION TO RECONSIDER ORDER.

(21) A) IT WAS MY ORIGINAL INTENT TO PROVIDE THIS COURT WITH A PROPER LEGAL MEMORANDUM THAT ARTICULATED LEGAL ARGUMENTS SUPPORTED BY LEGAL CITATIONS.

B) BUT EVERSINCE FILING THE EMERGENCY PETITION FOR A TRO, AND PRELIMINARY INJUNCTION; MY WRITTEN REQUESTS FOR SPECIFIC RESEARCH MATERIALS HAVE GONE WITHOUT RESPONSE FROM THE PRISON LAW LIBRARY.

C) WHEN I REPEATED MY WRITTEN REQUESTS I RECIEVED ANOTHER MALICIOUS AND RETALIATORY DISCIPLINARY WRITE UP, BY THE LIBRARIAN BILLIE LAYNE - WHILE THE WRITE UP WAS DISMISSED AFTER I FILED A COMPLAINT TO THE DEFENDANT JIM SALMONSON, AND FILED A SEPERATE GRIEVANCE; THE CHILLING MESSAGE THAT I TOOK FROM IT IS THAT I FACE PROBABLE RETALIATION IF I ACCESS THE COURTS. (RETALIATION KNOWN TO INCLUDE BUT NOT LIMETED TO: FALSE WRITE UPS, TAMPORING WITH MAIL, TRANSFERS TO ANOTHER PRISON OUT OF STATE, STEALING LEGAL PAPERWORK DURING CELL SEARCHES, BARRIERS TO MEANINGFUL LEGAL RESEARCH, ETC.)

[Margin note: LEWIS V. CASEY, 518 U.S. 343, 351-53, 116 S.Ct. 2174 (1996)]

D) I AM EXPERIENCING HINDERED ACCESS TO LEGAL RESEARCH (I DOCUMENT ALL MY REQUESTS AND SAVE COPIES OF ALL WRITTEN REQUESTS) THAT WILL NOT BE REMIDIED IN TIME FOR ME TO SUBMIT BEFORE THIS COURTS 12/13/18 DEADLINE. IF THE PROBLEM CONTINUES I WILL HAVE TO SEEK ANOTHER TRO AND PRELIMINARY INJUNCTION OVER ACCESS TO LEGAL RESEARCH. BOUNDS V. SMITH, 430 U.S. 817, 828, 97 U.S. 1491 (1977)

E) AS I AM FORCED TO PROCEED WITHOUT MY PLANNED LEGAL CITATIONS, I ASK THIS COURT TO BE LENIENT IN NOT HOLDING THIS PRO SE SUBMISSION TO THE HIGHER STANDARD EXPECTED FROM PROPERLY EQUIPPED LEGAL PROFESSIONALS, GIVEN THE CHALLANGES AND BARRIERS OF LITIGATING UNDER SUCH ADVERSITY.

22) [INCORPORATED BY REFERENCE TO SECTION (I.) PARAGRAPH 1 OF THE SWORN DECLARATORY AFFIDAVIT (SDA)].

A) INMATES HAVE A LIBERTY INTREST IN BEING FREE OF THE CONSEQUENCES ATTENDING FALSE AND MALICIOUS DISCIPLINARY REPORTS. THAT THE PETITIONER HAS SUFFERED JUST SUCH A LIBERTY INTREST.

MORRISON V. LEFEVRE, 592 F.SUPP. 1052, 1073 (S.D. N.Y 1984) SMITH V. WADE, 461 U.S. 30, 56 103 S.CT 1625 (1983)

B) THAT THERE IS CREDIBLE REASON TO BELIEVE BOSTWICK HAS COMMITTED THESE MALICIOUS ACTS IN THE PAST.

C) THAT THERE IS A REASONABLE EXPECTATION OF EVIDENCIARY CORROBORATION FROM OTHER INMATES OR STAFF WITNESSES AND/OR ANY DISCOVERABLE EXAMINATION OF HER PAST FILED DISCIPLINARY REPORTS.

D) IF COMPELLING EVIDENCE WERE UNCOVERED IT WOULD BE RELEVANT TO BOSTWICKS CREDIBILITY IN HER ALLEGATIONS AGAINST THE PETITIONER, AND TO THEORY ON MOTIVE.

E) ANY 1983 ACTION WOULD NAME EDUCATION DIRECTOR MARISA BOSTWICK AS A DEFENDANT IN HER OFFICIAL AND INDIVIDUAL CAPACITIES, FOR 1ST, 5TH, 14TH, 8TH, AMENDMENT; AND R.L.U.I.P.A INFRINGEMENT UPON THE PETITIONER.

23) [INCORPORATING BY REFERENCE TO SECTION (I.) PARAGRAPH #2 OF THE SDA].

A) THE PETITIONER IS UNDER THE AUTHORITY OF PRISON STAFF AT ALL TIMES, AND CANNOT REFUSE A DIRECT ORDER, EVEN IF ITS ILLEGAL.

B) ANY SIGNATURE COMPELLED BY SUCH CIRCUMSTANCES, CANNOT BE CONSIDERED TO BE AN INTELLIGENT OR WILLING ACKNOWLEDGEMENT OF ANY PORTION OF IT'S CONTENTS.

C) WITHOUT PROPER KNOWLEDGE OF AN ACCUSATION AN INMATE CANNOT BE EXPECTED TO ANTICIPATE WHAT WITNESSES HE WILL NEED IN HIS DEFENSE. BENITZ V. WOLFF, 985 F.2d 662, 665 (2d CIR 1993), NORTHERN V. HANKS 326 F.3d 909 (7th CIR 2003) WOLF V. McDONNELL, 418 US at 539, 94 S.CT. 2963 (1974), McKINNON V. PATTERSON, 568 F.2d 930 (2d CIR 1977)

D) THAT STAFF ARE AWARE THAT THEIR GOLDEN ROD COLORED CARBON COPIES ARE NEVER LEGIBLE, RENDERS THE SERVING PROCESS MOOT. IT HAS THE EQUIVILANT EFFECT OF SERVING A BLANK PIECE OF PAPER.

(24) [INCORPORATING BY REFERENCE TO SECTION (I.), PARAGRAPHS #3 AND #5 OF SDA]

A) THAT THE PETITIONER MADE EVERY REASONABLE ATTEMPT TO NOTIFY THE APPROPRIATE STAFF OF THE DEFICIENCY OF NOTICE, AND TO OBTAIN A LEGIBLE COPY OF THE ALLEGATION, AND COPY OF THE DISCIPLINARY POLICY IS PROBATIVE OF PETITIONERS HANDICAP TO BLINDLY DEFEND HIMSELF AGAINST THE ALLEGATION. (SEE CASELAW AT PARA 23-C)

B) FURTHER PROBATIVE OF DHO SLAUGHTER HAVING NO EXCUSE TO PROVIDE THE PETITIONER WITH THE LEGALLY OBLIGATED (BY POLICY AND THE ATTENDING LIBERTY INTREST CREATED WHEN POLICY LIMETS OFFICIAL DISCRETION, AND ESTABLISHED CASELAW WOLFF V. McDONALD S.Ct. 296 (1974)) DISCIPLINARY REPORT 24 HOURS IN ADVANCE, OR REFUSAL TO GRANT A CONTINUANCE TO ENSURE A FAIR HEARING.

(25) [INCORPORATING BY REFERENCE TO SECTION (I.), PARAGRAPH #4 OF SDA]

A) THAT THE DHO C. SLAUGHTER'S REPUTATION FOR BIAS AGAINST INMATES IN DISCIPLINARY HEARINGS IS PROBATIVE OF AN ONGOING PROBLEM THAT IF SENIOR SUPERVISORS AND ADMINISTRATORS HAD KNOWLEDGE OF THESE UNCONSTITUTIONAL ACTS AND FAILED TO ACT, THEY WOULD BE LIABLE.

B) ANY 1983 ACTION WOUID NAME ANY SUCH SUPERVISORS AND ADMINISTRATORS AS DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES FOR 1st, 5th, 8th, 14th AMENDMENT INFRINGEMENTS UPON THE PETITIONER, IN NEXUS TO ANY REVELATION OF SUCH SUPERVISORY KNOWLEDGE OF UNCONSTITUTIONAL BIAS.

C) THE LACK OF SPECIFIC KNOWLEDGE OF ALLEGATIONS, OR DISCIPLINARY POLICY IS PROBATIVE OF INJURY TO THE PETITIONER'S ABILITY TO PREPARE A SUBSTANATIVELY MEANINGFUL DEFENSE; FORCING HIM TO BLINDLY GUESS WHAT DEFENSE WAS NEEDED.

(26) [INCORPORATING BY REFERENCE TO SECTION (I.) PARAGRAPHS # 5, #6, #7, #8 OF SDA]

A) THE ATTENDING SUBSTANATIVE AND PROCEDURAL DUE PROCESS THE PETITIONER WAS ENTITLED TO RECIEVE UNDER PRISON POLICY (WHICH LIMETS OFFICIAL DISCRETION AND CREATES A LIBERTY INTREST), THE US CONSTITUTION, AND ITS ATTENDING AND ESTABLISHED JUDICIAL PRECEDENTS (TO INCLUDE, BUT NOT LIMETED TO → MUJAHID V. MEYER, 59 F.3d 931, 932 (9TH CIR 1995)

1 CONNER V. SAKAI, 15 F.3d 1463 (9TH CIR 1993) 2 GR[illegible] V. COUGHLIN [illegible] (2d CIR 1994) 3 FRANCIS V. COUGHLIN, 891 F.2d 43, 47 (2d CIR 1989) 4 COLON V. COUGHLIN, 58 F.3d 865, 871 (2d CIR 1995) 5 PANNELL V. MCBRIDE, 306 F.3d 499 (7TH CIR 2002) (PER CURIAM) 6 PONTE V. REAL, 471 U.S 491, 495, 105 S.CT 2192 (1985) 7 SMITH V. MASSACHUSETTS DEPT OF CORRECTIONS supra 936 F.2d 1390, 1401 (1ST CIR 1991) 8 PATTERSON V. COUGHLIN, 905 F.2d 564, 570 (2d CIR 1990) 9 VIENS V. DANIEL, 871 F.2d 1328, 1336 N.2 (7TH CIR 1989) 10 SMITH V. FARLEY, 858 F.SUPP. 806, 808-9 (N.D IND 1993) 11 NONNETTE V. SMALL, 316 F.3d 872, 879 (9TH CIR 2002)

WOLFF V. MCDONALD, S.CT. 2963 (1974)); BUT NEVER RECIEVED IS NAUSEATING. (5th, 8th, 14th AMENDMENT VIOLATIONS)

B) HE WAS RAILROADED BY DHO SLAUGHTER WHO PREDETERMINED GUILT, HAD NO INTREST IN SEEKING THE TRUTH, OR AFFORDING THE PETITIONER A FAIR AND IMPARTIAL HEARING. 12 BROWN V. PLAUT, 131 F.3d 163, 172 (D.C CIR 1997) 13 WHITFORD V. BOGLINE, 63 F.3d 527, 534 (7th CIR 1995) (PER CURIAM) 14 NEED V. STATE, 795 P.2d, 912, 914 (IDAHO. APP 1990)

C) THE INCREASE IN SANCTIONS FROM 15 DAYS TO 25 DAYS, AFTER INTERCEPTING AND NOT SUBMITTING THE PETITIONERS APPEAL FROM THE ORIGINAL HEARING IS PROBATIVE OF RETALIATION BY THE DHO AGAINST THE PETITIONER FOR FILING AN EXHAUSTIVE AND CRITICAL APPEAL, TO HER SUPERVISOR THE ASSOCIATE WARDEN. (1ST, 8TH AMENDMENT VIOLATIONS)

D) THE DHO SLAUGHTER HAS NO ELIGIBLE "GOOD FAITH" DEFENSE OR QUALIFIED IMMUNITY FOR HER ACTIONS.

E) ANY 1983 ACTION WOULD NAME DISCIPLINARY HEARINGS OFFICER CHRISTINE SLAUGHTER AS A DEFENDANT IN HER OFFICIAL AND INDIVIDUAL CAPACITIES FOR 1ST, 5TH, 8TH, AND 14TH AMENDMENT INFRINGEMENT UPON THE PETITIONER; AND WOULD SEEK A PERMANENT INJUNCTION AGAINST THE DHO'S ERRONEOUS GUILTY VERDICT. KING V. HIGGINS, 370 F.SUPP. 1023, 1029 (D. MASS. 1974) HAYES V. THOMPSON, 637 F.2d 483, 493 (7TH CIR 1980) WERE V. HEYNE, 575 F.2d 593, 596 (7th CIR 1978)

(27) [INCORPORATING BY REFERENCE TO SECTION (I.), PARAGRAPHS #9 AND #11 OF SDA]

DYSON V. KOCIK, 689 F.2d 466, 467 (3d CIR 1982) HAYES V. WALKER, 555 F.2d 625, 633 (7th CIR) CERT DENIED 434 U.S 959 (1977) KING V. WELLS, 760 F.2d 89, at 93-4 (6th CIR 1985) CULBERT V. YOUNG, 834 F.2d 624, 631 (7th CIR 1987) CERT DENIED 493 U.S. 1088 (1990)

A) THAT THE RUBBER STAMPING OF THE DHO SLAUGHTERS GUILTY DISCIPLINARY DECISION BY ASSOCIATE WARDEN THOMAS WILSON, IS PROBATIVE THAT EITHER (1) HE NEVER RECIEVED THE ACCOMPANYING 2-PAGE INCIDENT STATEMENT AND/OR 2-PAGE APPEAL STATEMENT FOR REVIEW; BECAUSE IT WAS WITHELD FROM HIM AS DHO SLAUGHTER WITHELD THE 1ST APPEAL w/ APPEAL STATEMENT (SEE SECTION I. PARAGRAPH 8, A), OR (2) HE RECIEVED IT AND WAS WILLFULLY INDIFFERENT, LACKED IMPARTIALITY, AND DECIDED AGAINST INVESTIGATING THE APPEAL PROPERLY. NONNETTE V. SMALL 316 F.3d 872, 879 (9TH CIR 2002) CHAVIS V. ROWE, 643 F.2d 1281, 1287 (7thCIR 1981) CERT DENIED, 454 U.S. 907 (1981)

B) IF THE 1ST IS TRUE, THAN HE IS POSSIBLY ENTITLED TO A "GOOD FAITH" DEFENSE, OR QUALIFIED IMMUNITY IN HIS INDIVIDUAL CAPACITY.

C) BUT IF THE LATER IS TRUE, THAN ANY 1983 ACTION WOULD NAME ASSOCIATE WARDEN THOMAS WILSON AS A DEFENDANT IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES FOR ATTENDING 1ST, 5TH, 8TH, AND 14TH

(21)



AMENDMENT, ~~AND~~ INFRINGEMENT UPON THE PETITIONER

(28) [INCORPORATING BY REFERENCE TO SECTION (I.), PARAGRAPHS #10, #12, #16, AND #18 OF SDA]

A) THAT THE ORIGINAL CLASSIFICATION HEARING [PARAGRAPH #10] WAS BASED ON AN OBJECTIVE SCORING SYSTEM THAT FOLLOWED POLICY. POLICY THAT LIMETS OFFICIAL DISCRETION AND CREATES A LIBERTY INTREST AGAINST UNWARRANTED INCREASED DISCIPLINARY SANCTIONS WITHOUT DUE PROCESS. BUT THE SUBSEQUENT RECLASSIFICATION BY UNKNOWN STAFF WAS NOT OBJECTIVE AND DID NOT FOLLOW POLICY, AND WAS AN INCREASED DISCIPLINARY SANCTION WITHOUT DUE PROCESS. PROBATIVE OF A VIOLATED LIBERTY INTREST, AND ATYPICAL AND SIGNIFICANT HARDSHIP. MUJAHID V. MEYER, 59 F.3d 931, 932 (9th CIR 1995)

B) TO OVERIDE THE PETITIONER FROM CLOSE CUSTODY GENERAL POPULATION [PARAGRAPH 10] TO MAX CUSTODY AD-SEG [PARAGRAPHS 12, 16, 18] WAS AN INCREASE IN PUNISHMENT ABOVE AND BEYOND THE SANCTIONS IMPOSED BY THE DHO [PARAGRAPH 8, D, + THEN PARAGRAPH 10 B, C]. THIS OBLIGATED DUE PROCESS IN THE FORM OF AT LEAST A HEARING AND NOTICE OF DECISION TO MAKE AN INFORMED APPEAL. NONNETTE V. SMALL, 316 F.3d 872, 879 (9TH CIR 2002), DOMEGAN V. FAIR, 859 F.2d 1059, 1063-4 (1ST CIR 1988) GREEN V. JOHNSON, 977 F.2d 1383, 1391 (10TH CIR 1992)

C) THIS IS AN ATYPICAL AND SIGNIFICANT HARDSHIP, THAT IS NOT IMPOSED ON OTHER INMATES WITH COMPARABLE CLASSIFICATION POINTS OR DISCIPLINARY HISTORY TO THE PETITIONER. ALSO, THE ATTENDING DIFFERENCES BETWEEN AD-SEG AND GENERAL POPULATION IS EXTREME AND SIGNIFICANT. SEVERE PROPERTY LIMETATIONS IS ONLY ONE OF THOSE CONSEQUENTIAL IMPACTS SUFFERED BY THE PETITIONER. RESNICK V. HAYES, 213 F.3d 443, 445 (9TH CIR 2000) KEENAN V. HALL, 83 F.3d 1083, 1088 (9TH CIR 1996) AMEND 135 F.3d 1318 (9TH CIR 1998)

D) ANY 1983 ACTION WOULD NAME THE UNKNOWN STAFF RESPONSIBLE FOR THE MAX CUSTODY AD-SEG OVERIDE WITHOUT DUE PROCESS, AS DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES FOR 5TH, 8TH, AND 14TH AMENDMENT INFRINGEMENTS UPON THE PETITIONER. (POTENTIALLY 1ST AMENDMENT ALSO)

E) TO ENSURE CLARITY OF PETITIONERS INTENTIONS; ANY 1983 ACTION WOULD ALSO NAME EDUCATION DIRECTOR MARISA BOSTWICK AND DISCIPLINARY HEARINGS OFFICER CHRISTINE SLAUGHTER AS DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES (FOR THE ATTENDING HARMS TO THE PETITIONERS CONSTITUTIONAL RIGHTS, CAUSED BY THEIR INDIVIDUAL ACTIONS AND THE AFFECT ON THE PETITIONERS CLASSIFICATION AND HOUSING STATUS) FOR 1ST, 5TH, 8TH, AND

14TH AMENDMENT INFRINGEMENTS UPON THE PETITIONER:

(29) [INCORPORATING BY REFERENCE TO SECTION (I), PARAGRAPHS #14, and #15 OF SDA]

A) THAT THE DEPRIVATIONS OF PROPERTY IS AN ATYPICAL AND SIGNIFICANT HARDSHIP, AND AN ADDITIONAL INCREASE IN THE DISCIPLINARY SANCTIONS IMPOSED BY DHO SLAUGHTER (SEE PARAGRAPH 8, D THEN PARAGRAPHS 10, B, C) WITHOUT DUE PROCESS. WHERE INMATES ARE AFFORDED PERSONNAL PROPERTY, THEY CANNOT BE PERMANENTLY DEPRIVED OF THEIR PROPERTY WITHOUT DUE PROCESS. DOMEGAN V. FAIR, 859 F.2d 1059, 1063-4 (1ST CIR 1988) GREEN V. JOHNSON, 977 F.2d 1383, 1391 (10 CIR 1992)

B) THAT THE DEPRIVATION OF DUE PROCESS AT THE DISCIPLINARY HEARINGS [SEE PARAGRAPHS #6, 7, 8, 9, AND 11] AND/OR THE DEPRIVATIONS OF DUE PROCESS AT THE CLASSIFICATION OVERRIDE DECISION [SEE PARAGRAPHS 10, 12, 16, 18] CAUSED PERSONNAL PROPERTY DEPRIVATIONS TO THE PETITIONER.

C) ANY 1983 ACTION WOULD NAME EDUCATION DIRECTOR MARISA BOSTWICK, AND DISCIPLINARY HEARINGS OFFICER CHRISTNE SLAUGHTER, AND THE UNKNOWN STAFF RESPONSIBLE FOR THE MAX CUSTODY AD-SEG OVERRIDE AS DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES FOR 1ST, 5TH, 8TH, 14TH AMENDMENTS AND RLUIPA INFRINGEMENTS UPON THE PETITIONER.

D) THAT PROPERTY OFFICER DARCY HUNT, WOULD HAVE BEEN ACTING ACCORDING TO POLICY THAT HE REASONABLY COULD BELIEVE WAS LAWFUL, AND COULD POSSIBLY QUALIFY FOR A "GOOD FAITH" DEFENSE OR QUALIFIED IMMUNITY, IN HIS INDIVIDUAL CAPACITY.

E) THAT THE PROPERTY POLICY AS A WHOLE OR IN PART (SEE SECTION (I.) PARAGRAPHS #15, D, E, F) IS UNCONSTITUTIONAL ~~AND UNCONSTITUTIONAL~~ AND SERVES NO REASONABLE RELATIONSHIP TO A NEUTRAL LEGITIMATE PENOLOGICAL INTREST.

① THE PRISON CANNOT SELL OR ALLOW ITEMS TO INMATES, ONLY TO CONFISCATE THEM IMMEDIATLY AFTER. THE PROPERTY MATRIX NEEDS TO BE UPDATED TO ACCURATLY REFLECT ITEMS AVAILABLE FOR SALE TO INMATES, OR THROUGH HOBBY/INFIRMARY/RAC/OR EDUCATION/LIBRARY OR ANY OTHER AUTHORIZED SOURCE, AND INCLUDE ALL ATTENDING ACCESSORIES THAT COME WITH THOSE ITEMS.

② MAGAZINES/NEWSPAPERS/BOOKS SHOULD BE DELIVERED TO INMATES IN DISCIPLINARY CONFINEMENT, OR AT LEAST NOT COUNTED AGAINST QUANTITY LIMETS ON POSSESSED PROPERTY ALLOWANCES FOR PUBLICATIONS, UNTIL AFTER A

(margin, for A:) MATHEWS V. ELDRIDGE, 424 U.S. 319, 335, 96 S.CT. 893 (1976); SAMPLE V. DIECKS, 885 F.2d 1099, 1114 (3d CIR 1989); DANIELS V. WILLIAMS, 474 U.S. 327, 328, 106 S.CT. 662 (1986); McCRAE V. HANKINS, 720 F.2d 863, 869 (5th CIR 1983)

(margin, for E:) FRANKLIN V. AYCOCK 795 F.2d 1253, 1261-2 (6th CIR 1986); SOURBEER V. ROBINSON, 791 F.2d 1094, 1105 (3d CIR 1986); MALDONADO SANTIAGO V. VELAZQUEZ GARCIA, 821 F.2d 822, 828 (1st CIR 1987)

BRIEF GRACE PERIOD, AFTER RESUMED DELIVERY OF WITHELD PUBLICATIONS. ③ THAT A PUBLICATION IS A PUBLICATION. THERE IS NO REASONABLE RELATIONSHIP TO A PENOLOGICAL INTREST IN A POLICY THAT ALLOWS GENERAL POPULATION INMATES TO HAVE 15 PUBLICATIONS OF ANY VARIETY, BUT AD-SEG INMATES 14 PUBLICATIONS OF A SPECIFIC VARIETY. PRACTICE IS OVERLY RESTRICTIVE, AND FORCES DESTRUCTION OF PUBLICATIONS. ④ AD-SEG LIMETATIONS TO (1) RELIGIOUS PUBLICATION ALSO VIOLATES THE 1ST AMENDMENT AND RLUIPA PROTECTIONS OF RELIGIOUS BELIEFS. ⑤ THE AD-SEG PUBLICATION RESTRICTIONS CAUSE OTHERWISE AUTHORIZED PUBLICATIONS TO BE HELD BACK BY PROPERTY STAFF, PLACING THEM IN THE POSITION OF CHOOSING WHICH PUBLICATIONS OUT OF AN INMATES PROPERTY HE WILL RECIEVE. SINCE THEIR PREFERENCES WILL NOT BE THE SAME AS THE INMATES, IT IS CENSORSHIP. ONE MAN MAY VALUE A SPORTS ALMANAC, WHILE ANOTHER VALUES THE BIBLE. ⑥ THERE IS NO REASON WHY AD-SEG INMATES CANNOT HAVE THEIR PROPERTY STORED. THE PROPERTY POLICY CONTAINS A PROVISION FOR LONG TERM AUXILLARY STORAGE OF INMATE PERSONNAL PROPERTY PAID THROUGH THE INMATE WELFARE FUND. FUNDS GENERATED BY INMATE PURCHASES, AND NOT OUT OF THE PRISON BUDGET OR TAXPAYER PUBLIC FUNDS. ⑦ THAT PROPERTY DEPRIVATIONS BY POLICY, IS WITHIN THE SPECIFIC SANCTIONS OF THE DISCIPLINARY POLICY, FOR THE DHO TO IMPOSE (BUT DID NOT IN THE PETITIONERS CASE). POLICY THAT CREATES A LIBERTY INTREST NOT TO RECIEVE AN INCREASE IN DISCIPLINARY SANCTIONS WITHOUT DUE PROCESS. THE DEPRIVATIONS OF PROPERTY WITHOUT DUE PROCESS IS A VIOLATION OF THE 5TH AND 14TH AMENDMENTS. DEPRIVATION OF CERTAIN OTHER PROPERTY CAN QUALIFY AS AN ADDITIONAL 1ST AMENDMENT AND RLUIPA VIOLATION. POLICIES SHOULD PROVIDE FOR SUBSTANATIVE AND PROCEDURAL DUE PROCESS, AND EXHAUSTION OF APPEALS AND GRIEVANCES, BEFORE ANY PERMANENT PROPERTY DEPRIVATIONS.

(SEE CASELAW AT PARAGRAPH #29-A)

MUJAHID V. MEYER, 59 F.3d 931, 932 (9th CIR 1995)

(F) THAT THE PETITIONER WOULD SEEK RELIEF IN THE FORM OF A PERMANENT INJUNCTION. THAT THE WARDEN IS THE CUSTODIAN OF ALL PRISON POLICIES. ANY 1983 ACTION WOULD NAME WARDEN JIM SALMONSON, AND PROPERTY OFFICER DARCY HUNT IN THEIR OFFICIAL CAPACITIES FOR 1ST, 5TH, 14TH AMENDMENTS, AND RLUIPA INFRINGEMENT UPON THE PETITIONER. HONEY V. DISTELRATH, 195 F.3d 531, 534 (9th CIR 1999)

G) THAT THE PROPERTY POLICY REQUIRES THE PROPERTY MATRIX TO BE ANUALLY

UPDATED. A POLICY WHICH CREATES A LIBERTY INTREST TO LIMET OFFICIAL DISCRETION AGAINST CONFISCATION OF OTHERWISE AUTHORIZED PROPERTY. THAT THE PROPERTY MATRIX'S HAD NOT BEEN UPDATED SINCE 11/4/2014, CAUSING HARM TO THE PETITIONER BY THE LOSS OF OTHERWISE AUTHORIZED PROPERTY, AVAILABLE ON CANTEEN, OR THROUGH OTHER APPROVED MEANS (SEE SECTION (I) PARAGRAPHS 15, B, C). THE LOSS OF PROPERTY THAT INFRINGED ON POLICY OBLIGATIONS THAT LIMET OFFICIAL DISCRETION, AND CREATED A LIBERTY INTREST, IN ADDITION TO INFRINGED CONSTITUTIONAL RIGHTS.

H) ANY 1983 ACTION WOULD NAME THE UNKNOWN STAFF RESPONSIBLE FOR FAILING TO FOLLOW POLICY OBLIGATED ANNUAL PROPERTY MATRIX UPDATES; AS DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES FOR ANY 1st, 5TH, [crossed out], 14TH AMENDMENT, AND RLUIPA INFRINGEMENTS UPON THE PETITIONER.

I) THAT PROPERTY DISCARDED UPON INITIAL SEARCH AND INVENTORY BY C.O. BEASLEY ON 9/7/18 (SEE PARAGRAPH 15C, SECTION (I)) USING THE OUTDATED PROPERTY MATRIX, DID NOT EXCUSE HIS OBLIGATIONS UNDER OTHER POLICIES THAT LIMETED OFFICIAL DISCRETION AND CREATED LIBERTY INTRESTS TO ENSURE ALL ALLEGED CONTRABAND BE CONFISCATED, INVENTORIED, AND STORED FOR DUE PROCESS PROTECTIONS THE PETITIONER WAS ENTITLED TO RECIEVE, BUT NEVER DID. STEWART V. MCGINNIS, 5 F.3d 1031, 1037 (7th CIR 1993)

↑ FARID V. SMITH, 850 F.2d 917, 925 (2d CIR 1988)

J) ANY 1983 ACTION WOULD NAME CORRECTIONAL OFFICER BEASLEY AS A DEFENDANT IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES FOR 1ST, 5TH, 8TH, AND 14TH AMENDMENT INFRINGEMENT UPON THE PETITIONER.

(30) [INCORPORATED BY REFERENCE TO SECTION (I.), PARAGRAPH 17 OF SDA]

A) THAT THE PRACTICE, POLICY, OR PROCEDURE AS DIRECTED AND IMPLEMENTED BY HOBBY DIRECTOR KAREN HORSWELL; PROHIBITS THE SENDING OR RECIEVING OF DRAWINGS IN THE MAIL WITHOUT AN ART PERMIT. THAT IT PROHIBITS CREATING OR POSSESSING ANY BASIC DRAWINGS OR SKETCHES THAT MAKE NO USE OF SPECIAL ART SUPPLIES WITHOUT AN ART PERMIT.

B) THAT THIS PRACTICE, POLICY, OR PROCEDURE CAUSED HARM TO THE







PETITIONER BY CONFISCATION, BY THE PROPERTY OFFICER DARCY HUNT, (SEE PARAGRAPH 15, D) OF DRAWINGS AND SIMPLE SKETCHES (UNIQUE PERSONNAL PROPERTY) HE RECIEVED IN THE MAIL FROM FRIENDS AND FAMILY, WHEN HIS ART PERMIT WAS CONFISCATED.

C) THAT THIS PRACTICE, POLICY, OR PROCEDURE CAUSED HARM TO THE PETITIONER WHEN HE WAS PREVENTED FROM CREATING SIMPLE DRAWINGS OR SKETCHES, THAT MADE NO USE OF SPECIAL ART SUPPLIES, AND SENDING THEM TO HIS FRIENDS OR FAMILY OR CHRISTIAN MINISTRIES, WHEN HIS ART PERMIT WAS CONFISCATED.

D) THAT THE CLASSIFICATION INCREASE FOR A DISCIPLINARY INFRACTION, UNDER HOBBY POLICY OBLIGATED REVOCATION OF THE PETITIONERS ART PERMIT, AND CONFISCATION OF ART SUPPLIES SOLD THROUGH THE HOBBY DEPARTMENT. BUT THAT THE POLICY WENT TOO FAR WHEN IT AFFECTED HIS SENDING, RECIEVING, POSSESSING, OR CREATING ANY SIMPLE DRAWING OR SKETCH THAT MADE NO USE OF SPECIAL ART SUPPLIES AVALLABLE THROUGH THE HOBBY DEPARTMENT.

E) THAT THESE PROHIBITIONS ARE NOT REASONABLY RELATED TO ANY LEGITIMATE NEUTRAL PENOLOGICAL INTRESTS.

F) THE PETITIONERS ARGUES THAT ART, THAT UTILIZES SPECIAL ART SUPPLIES OBTAINED THROUGH THE HOBBY DEPARTMENT (PAINT, GLUE, SCISSORS, ETC) AND ITS ATTENDING PERMIT SYSTEM IS A PRIVILAGE SUBJECT TO POLICY DISCRETIONS.

G) BUT ART THAT IS IN THE FORM OF DRAWINGS/SKETCHES/DOODLES, THAT MAKE NO USE OF SPECIAL HOBBY ART ITEMS, AND USE ONLY ITEMS SOLD ON ORDINARY CANTEEN (PAPER, PENCIL, PEN), IS A FORM OF SPEECH PROTECTED BY THE 1ST AMENDMENT, AND SHOULD NOT BE SUBJECT TO THE HOBBY PERMIT / HOBBY POLICY

H) THE POLICY PROHIBITS INMATES FROM MAILING OUT SIMPLE DRAWINGS/SKETCHES (OFTEN IN THE FORM OF SPECIAL OCCASSION CARDS) TO ANYONE NOT ON THE INMATE'S APPROVED VISITOR LIST. BUT NOT EVERYONE WILL SUBMIT TO AN INTRUSIVE APPLICATION PROCESS TO RECIEVE THESE SIMPLE DRAWINGS/SKETCHES AS AN "APPROVED VISITOR" (PEOPLE LIVING OUT OF STATE, MINORS, CHRISTIAN MINISTRIES, ETC). PRIVATE CITIZENS ON ONE INMATE'S APPROVED VISITOR LIST, CAN'T

ALSO BE ON A 2ND INMATES APPROVED VISITOR LIST, EFFECTIVELY PROHIBITING THESE PRIVATE CITIZENS FROM THE RECIEPT OF THESE SIMPLE DRAWINGS IN THE MAIL. SUCH ERECTED BARRIERS ON OUTGOING MAIL VIOLATES PROCUNIER V. MARTINEZ, 416 U.S. 396 (1974).

I) TO OBTAIN AN ART PERMIT, REQUIRES PURCHASES BY THE INMATE THROUGH SPECIAL HOBBY CANTEEN OF SPECIAL ART SUPPLIES. PREVENTING INDIGENT INMATES FROM OBTAINING AN ART PERMIT, TO CREATE, POSSES, RECIEVE OR MAIL OUT SIMPLE DRAWINGS/SKETCHES INVOLVING ONLY PENCIL/PEN AND PAPER. HOW CAN SUCH BASIC 1ST AMENDMENT EXPRESSION ONLY BE FOR SALE?

J) NOR IS POLICY NARROWLY DRAWN TO EXCLUDE BLUEPRINTS, MECHANICAL/TECHNICAL/ARCHITECTUAL DRAWINGS. THE PETITIONERS VOCATION IS AS A MACHINEST AND MECHANICAL ENGINEERING. BY HORSWELL'S INTERPRETATION AND APPLICATION OF POLICY, HE IS PROHIBITED FROM DRAFTING MECHANICAL BLUEPRINTS/DRAWINGS OF HIS INVENTIONS, AND SENDING THEM TO INTERESTED PARTIES.

K) ALSO AN INMATE CAN ONLY HAVE 1-PERMIT UNDER POLICY (EXCEPTION IS WORK DORM INMATES CAN HAVE-2). IF HE ALREADY HAS A DIFFERENT HOBBY PERMIT (SUCH AS HORSEHAIR, BEADING, PAPERWEAVING, LEATHER, ETC) HE IS PROHIBITED FROM EXPRESSING HIMSELF THROUGH SIMPLE DRAWINGS/SKETCHES, AND SENDING THEM OUT IN THE MAIL TO FRIENDS/FAMILY.

L) NEW INMATES IN MDIU - INTAKE UNIT - WAIT ON AVERAGE 70-90 DAYS FOR HOUSING PLACEMENT. THEN MUST WAIT ANOTHER 30 DAYS BEFORE OBTAINING A HOBBY PERMIT. DURING THIS TIME THEY ARE PROHIBITED THIS BASIC FORM OF EXPRESSION.

M) ANY 1983 ACTION WOULD NAME HOBBY DIRECTOR KAREN HORSWELL, AND WARDEN JIM SALMONSON (CUSTODIAN OF POLICIES) AS DEFENDANT'S IN THEIR OFFICIAL CAPACITY FOR 1ST AMENDMENT INFRINGEMENT UPON THE PETITIONER, AND WOULD SEEK A PERMANENT INJUNCTON.

N) WHEN THE PETITIONER WAS FALSLY WRITTEN UP BY MARISA BOSTWICK, HE WAS SUBJECTED TO THE DISCIPLINARY HEARING PROCESS. WHEN DHO CHRISTINE SLAUGHTER GROSSLY VIOLATED THE PETITIONERS RIGHTS OF DUE PROCESS, SHE SANCTIONED HIM TO A RECLASSIFICATION OF CUSTODY AND HOUSING STATUS. WHICH IN TURN CAUSED THE

CONFISCATION AND PENDING DISPOSAL OF THE PETITIONERS ART SUPPLIES AND PERSONNAL MAIL IN THE FORM OF DRAWINGS SENT IN BY FAMILY AND FRIENDS. [SEE SECTION (I.) PARAGRAPH 1, 6, 8]

O) ANY 1983 ACTION WOULD NAME EDUCATION DIRECTOR MARISA BOSTWICK AND DISCIPLINARY HEARINGS OFFICER CHRISTINE SLAUGHTER AS DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES FOR 1ST, 5TH, 8TH, AND 14TH AMENDMENT, AND RLUIPA INFRINGEMENTS UPON THE PETITIONER.

IV. NOW COMES THE PETITIONER (KIBBY) WHO SUBMITS THE FOREGOING PARAGRAPHS UNDER SECTION III. OF THIS MEMORANDUM OF LAW IN SUPPORT OF SECTIONS I. AND II. OF THIS SWORN DECLARATORY AFFIDAVIT. AND NOW HUMBLY REQUESTS THAT THIS HONORABLE COURT:

A) ACCEPT THIS LEGAL DOCUMENT IN SUPPORT OF HIS EMERGENCY PETITION FOR A TRO AND PRELIMINARY INJUNCTION, AND ALSO HIS PETITION TO RECONSIDER, IN SUBSTITUTION FOR THE COURT ORDERED 1983 COMPLAINT FORMS. AND THEN ....

B) GRANT HIS PETITION TO RECONSIDER ORDER, AND THEN ....

C) FIND THAT THE PETITIONER IS THREATENED WITH IRREPARABLE HARM IN THE FORM OF PENDING DESTRUCTION OF HIS PERSONNAL PROPERTY AND UNIQUE PERSONNAL PROPERTY; AND THE BALANCE OF HARDSHIPS FAVORS THE PETITIONER; THE PETITIONER IS LIKELY TO SUCCEED ON THE MERITS; THAT THE RELIEF SOUGHT WILL SERVE THE PUBLIC INTREST; THAT AS AN INDIGENT PRISONER HE IS NOT ABLE AND SHOULD BE RELIEVED FROM POSTING SECURITY. AND THEN....

D) GRANT THE PETITIONERS EMERGENCY TRO. AND THEN....

E) GRANT THE PETITION FOR A PRELIMINARY INJUNCTION

RESPECTFULLY SUBMITTED,

Nathaniel Z. Kibby 11/30/18

NATHANIEL KIBBY #3019567 (PRO SE)
MONTANA STATE PRISON
700 CONLEY LAKE RD.
DEER LODGE, MT 59722





# CERTIFICATE OF SERVICE

I CERTIFY THAT I HAVE FILED A COPY OF THIS - SWORN DECLARATORY AFFIDAVIT AND LEGAL MEMORANDUM - WITH THE CLERK OF COURT - HELENA DIVISION USDC AT 901 FRONT ST., SUITE 2100, HELENA, MT 59629

- AND -

THAT I HAVE ALSO SUBMITTED A COPY TO THE DEFENDANT - JIM SALMONSON - INTERIM WARDEN OF THE MONTANA STATE PRISON DEER LODGE - THROUGH THE PRISONS INTERNAL MAIL DELIVERY PROCEDURE.

SUBMITTED THIS 30TH OF NOVEMBER, 2018

Nathaniel B. Kibby

PETITIONER

NATHANIEL KIBBY #3019567 (PRO SE)
MONTANA STATE PRISON
700 CONLEY LAKE RD.
DEER LODGE MT 59722